**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AJA EVANS,**

                                                   **Plaintiff,**

      **vs.**                                         **8:23-CV-1429**
                                                        **(MAD/CFH)**

**USA BOBSLED AND SKELETON FEDERATION,**
**UNITED STATES OLYMPIC & PARALYMPIC**
**COMMITTEE, JONATHAN WILHELM, and**
**PRO CHIROPRACTIC,**

                                     **Defendants.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**CARLISLE LAW FIRM, P.C.**        **EDWARD A. BETZ, ESQ.**
602 State Street
P.O. Box 757
Ogdensburg, New York 13669
Attorney for Plaintiff

**SIMPSON TUEGEL LAW FIRM**    **MICHELLE TUEGEL, ESQ.**
3611 Swiss Avenue, Suite 200       **MARYSSA J. SIMPSON, ESQ.**
Dallas, Texas 75204
Attorneys for Plaintiff

**WILSON, ELSER LAW FIRM**       **ERIC J. SAUTER, ESQ.**
1133 Westchester Avenue           **STEPHEN M. MARCELLINO, ESQ.**
White Plains, New York 10604
Attorneys for Defendant USA Bobsled
and Skeleton Foundation

**COVINGTON & BURLING LLP**     **MARY SWEARS, ESQ.**
The New York Times Building       **SARA J. DENNIS, ESQ.**
620 Eighth Avenue                   **LINDSEY CATHERINE BARNHART,**
New York, New York 10018          **ESQ.**
Attorneys for Defendant United States
Olympic & Paralympic Committee

**DAVID A. BYTHEWOOD, ESQ.**     **DAVID A. BYTHEWOOD, ESQ.**
114 Old Country Road - Suite LL-62

Mineola, New York 11501
Attorney for Defendants Jonathan Wilhelm
and Pro Chiropractic

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Aja Evans initiated this action by filing a complaint in Essex County Supreme

Court on September 20, 2023.  *See* Dkt. No. 2.  Defendant United States Olympic & Paralympic

Committee ("USOPC") removed the action to this Court on November 15, 2023.  *See* Dkt. No. 1.

Plaintiff alleges that as an Olympic bobsled athlete, she was sexually harassed and assaulted by

Defendant Jonathan Wilhelm during treatment sessions wherein he was working in his capacity as

an osteopathic medical provider for the USA Women's Bobsled team.  *See generally* Dkt. No. 2.

Plaintiff avers that Defendants USOPC, Pro Chiropractic, and USA Bobsled and Skeleton

Federation ("USABS") are liable for Wilhelm's conduct as his employers.  *See id.*  Presently

before the Court are Wilhelm's motion for summary judgment, USOPC and USABS' motions to

dismiss, and Plaintiff's responses in opposition thereto.  *See* Dkt. Nos. 36, 37, 38, 45, 46, 48.

For the following reasons, Wilhelm's motion for summary judgment is denied, and the

motions to dismiss are granted in part and denied in part.

### II. BACKGROUND[1]

Plaintiff is an Olympic athlete in track and field and a member of the USA Women's

Bobsled team.  *See* Dkt. No. 47-2 at ¶ 1.  USOPC is a national nonprofit organization that owns

and operates the U.S. Olympic & Paralympic Training Center in Lake Placid, New York.  *See id.*

---

[1] The following factual recitation is derived from Plaintiff's proposed first amended complaint.
*See* Dkt. No. 47-2.

at ¶ 3.  USABS is a nonprofit organization headquartered in Lake Placid, New York.  *See id.* at ¶ 2.  Plaintiff alleges that "USOPC and USABS are profoundly connected."  *Id.* at ¶ 34.  USABS is the National Governing Body ("NGB") for Bobsled in the United States.  *See id.* at ¶ 2.  USABS is overseen by USOPC.  *See id.*  Plaintiff contends that "USOPC [] benefits from money collected (as sponsorships, grants, or other), publicity garnered, and medals achieved by USABS athletes at competitions."  *Id.* at ¶ 34.  On the other hand, USABS relies on USOPC "for its very existence" because USOPC controls NGBs like USABS.  *Id.* at ¶ 35.  The USOPC Board "has the power to review all matters relating to the continued recognition of an NGB like USABS and may take such action as it considers appropriate, including, but not limited to, placing conditions upon USABS's continued recognition, placing it on probation, or suspending or terminating its recognition."  *Id.*  Plaintiff demonstrates this relationship by explaining a "recent investigation of the USABS for 'management concerns' (including practices relating to the treatment of athletes, their concerns, and mental health resources, among other things)."  *Id.*  "USOPC made recommendations for how USABS hires and evaluates its CEO."  *Id.*  "USOPC also said that USABS has been working with the USOPC Sport Performance team to develop an athlete pathway that clarifies progression through the sports of bobsled and skeleton."  *Id.*  Plaintiff notes that "[t]he investigation further found that USABS was not complying with some of its obligations and that, in order to maintain its certification as an NGB, it had to adopt, implement, and execute certain USOPC requirements in a timely manner, before its renewal process in 2024."  *Id.*  "Indeed, [] USOPC even recommended that one of the three individuals step down from the Selection Committees and suggest[ed] the CEO consider doing so."  *Id.*  Finally, Plaintiff alleges that USABS and USOPC share some employees and agents, such as Defendant Wilhelm.  *See id.* at ¶ 37.

Wilhelm owns and operates Defendant Pro Chiropractic, a Montana corporation. *See id.* at ¶¶ 4-5. "Wilhelm was appointed as the Traveling and Event Team Sports Chiropractor for" USABS. *Id.* at ¶ 31. Prior to his appointment Wilhelm worked at the USOPC training facility in Lake Placid. *See id.* Wilhelm first worked with the USA Bobsled Team in 2012. *See id.* at ¶ 33. His duties were as follows:

> coordinating the care for USA Bobsled at every national and international competition, providing individual care and providing for the physical needs and well-being of participants and members of USA Bobsled (and in accordance with Defendant USOPC policies, procedures, and mandates), and care including but not limited to osteopathic adjustments and kinesiology treatment to participants and members of USA Bobsled, which included Plaintiff.

*Id.* Wilhelm first began treating Plaintiff in 2012. *See id.* at ¶ 40. Plaintiff alleges that between 2012 and 2018 and in 2022, during "treatment" sessions with Wilhelm, he would "expose and touch her inner genital area and inner groin," "would grope, fondle, and/or touch Plaintiff's entire inner groin area, pubis, along her pelvic bone, and buttocks," "would [] pull Plaintiff's shorts up and away from her inner groin area, starting from the leg of her shorts, exposing her genitals, and would then touch her uncovered groin and would do so without gloves or proper medical warnings," "photographed Plaintiff and her teammates without consent," and "record[ed] them as they undressed." *Id.* at ¶¶ 47-50, 53-54, 57.

As a result of this conduct, "Plaintiff and her teammates went so far as to promote other chiropractic care providers directly to USA Bobsled, and even hired a separate team chiropractor, at their own expense, to avoid treatments and unwanted touching by Defendant Wilhelm." *Id.* at ¶ 58. Plaintiff alleges that after Wilhelm photographed Plaintiff and her teammates without their consent, they documented the instance in a "complaint letter" to USABS. *Id.* at ¶ 53.

Additionally, in 2018, Wilhelm recorded Plaintiff and her teammates, which "team members noticed" and "happened in plain view of USABS and USOPC staff.  All of the US Women's Bobsled athletes knew about it and many gave Wilhelm negative survey[] reviews via an online USOPC portal."  *Id.* at ¶ 54.  In 2021, a USABS women's athlete, Lauren Gibbs, e-mailed Andrew Ernst, USABS High Performance Director, and Dr. Eugene Byrne, an orthopedist for Team USA at USOPC's Lake Placid Center, complaining about Wilhelm's selection as their provider.  *See id.* at ¶ 60.  Ms. Gibbs indicated that "a few of the women have expressed in the past no [sic] wanting to work with him and in the most in others of the quad [sic] he will be the only option for the most crucial part of the selection process.  I really wish our safety would have been taken more seriously."  *Id.*  Mr. "Ernst responded, stating 'We use cumulative results from our provider surveys to select our volunteers along with provider availability.  I hope this adds some context as to why Jon was selected for this rotation[.]'"  *Id.*  Ms. Gibbs replied, "'It really does not.'  She emphasized: 'Multiple women have told you that they feel uncomfortable around Jon and cumulative data should not outweigh that. . . .  I'm disappointed that I am being forced to work with someone I have told you multiple times makes me uncomfortable.'"  *Id.*

Plaintiff alleges that "USOPC is fully aware of the growing societal awareness of the pervasiveness of sexual abuse in athletic organizations."  *Id.* at ¶ 66.  As a result of publicized sexual harassment and abuse scandals, USOPC created the Director of Ethics and SafeSport, in April 2011.  *See id.* at ¶ 68.  USOPC also "adopted a Safe Sport standard for the protection [of] amateur athlete[s] on an enterprise level regardless of USOPC or NGB affiliation."  *Id.*  "In June 2014, the USOPC board approved the plan to create an independent SafeSport entity.  The Center for SafeSport ("USCSS") eventually opened in March 2017, almost seven years after the USOPC had formed its initial SafeSport working group."  *Id.* at ¶ 69.  Plaintiff alleges that prior to the

USCSS being launched in 2017, "USOPC failed to update its own processes for handling complaints" and "continued its practice of declining to intervene at the level of individual complaints." *Id.* at ¶ 72. Plaintiff contends that "[t]he UCSS, since its inception, has averaged 85 complaints of sexual abuse per month." *Id.* at ¶ 70. Plaintiff states, "[a]thletes who did report to their NGB, like Plaintiff, were often dismissed out of hand and proper procedures were not followed." *Id.* at ¶ 72. Plaintiff contends that she "and her teammates' complaints were wholly ignored and Defendant Wilhelm was still selected by the USOPC and USA Bobsled to treat the U.S. Women's Bobsled Team (sometimes as the only treatment provider), even after clear complaints of concerning behavior and discomfort by athletes were reported in writing to officials and leadership." *Id.* at ¶ 73. Plaintiff alleges that "despite [her] efforts to report the abuse and treatment by Wilhelm, Plaintiff has been dismissed, disregarded, and otherwise not taken seriously by Defendants, leading to her re-traumatization, self-doubt, and mental and emotional trauma." *Id.* at ¶ 77.

## III. DISCUSSION

A.    **Legal Standards**

   *1. Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

### 2. Motion for Summary Judgment

"The entry of summary judgment is warranted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Doane v. United States*, 369 F. Supp. 3d 422, 438 (N.D.N.Y. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also* FED. R. CIV. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jennings v. Decker*, 359 F. Supp. 3d 196, 204 (N.D.N.Y. 2021) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Doane*, 369 F. Supp. 3d at 438; *Kenney v. Clay*, 172 F. Supp. 3d 628, 635 (N.D.N.Y. 2016).

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). However, irrelevant or unnecessary factual disputes do not preclude summary judgment. *See Anderson*, 477 U.S. at 248. Only genuine disputes about a material fact, such that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" will preclude summary judgment. *Id.*

The party moving for summary judgment "bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim." *Doane*, 369 F. Supp. 3d at 438. If the moving party establishes a prima facie basis for summary judgment and satisfies their burden, the burden then shifts to the nonmoving party, who must then "show, through affidavits or otherwise, that there is a material issue of fact for trial" that a reasonable jury could resolve in its favor. *Id.*; *see also Kenney*, 172 F. Supp. 3d at 635. Evidence that is not significantly probative, or "the mere existence of some alleged factual dispute between the parties[,] will not defeat an otherwise properly supported motion for summary judgment." *Kenney*, 172 F. Supp. 3d at 635-36 (quoting *Anderson*, 477 U.S. at 247-48); *see also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Genuine issues of fact are not created by conclusory allegations"). The nonmoving party must show by more than a "scintilla of evidence" that "a fact-finder could reasonably find for the non-movant." *Heublein*, 996 F.2d at 1461. In determining the existence of any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to

8

the nonmoving party." *Smith v. N.Y.S. Off. of Temp. & Disability Assistance*, 535 F. Supp. 3d 90, 94 (N.D.N.Y. 2021) (quoting *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017)); *see also Jeffreys*, 426 F.3d at 553.

**B.    Defendant Pro Chiropractic's Motion for Summary Judgment**

The Court's Local Rules require a party moving for summary judgment to submit "a separate Statement of Material Facts." N.D.N.Y. L.R. 56.1(a). "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established." *Id.* "The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits." *Id.* "Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." *Id.* (emphasis in original).

Defendant Pro Chiropractic's counseled motion for summary judgment is accompanied by a purported "Statement of Material Facts." Dkt. No. 36-17. The entire statement asserts as follows:

> Defendant Pro Chiropractic does not have and has never had a relationship with the Plaintiff, Aja Evans, Defendant USA Bobsled and Skelton Federation or Defendant US Olympic and Paralympic Committee. . . .

> Defendant Pro Chiropractic has never had any Notice of any kind concerning any complaints of Plaintiff, Aja Evans. . . .

> The only Notice had by Pro Chiropractic of Defendant Jonathan Wilhelm's voluntary service to either Defendant USA Bobsled and Skeleton Federation or Defendant US Olympic and Paralympic Committee has been of his providing exemplary service. See, entire motion.

> The Plaintiff, Aja Evans, completely lacks any veracity
> when complaining about Defendant Pro Chiropractic in the above-
> entitled action.  See, entire motion.

*Id.*

This "Statement of Material Facts" does not "set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y. L.R. 56.1(a).  In particular, the third and fourth contentions are not statements of fact and do not cite to "pleadings, depositions, answers to interrogatories, admissions and affidavits." *Id.*

Following Plaintiff filing her opposition, *see* Dkt. Nos, 48, 49, Defendant Pro Chiropractic submitted an "Amended Statement of Material Facts." Dkt. No. 51; *see also* Dkt. No. 50-3.  The only difference between its original submission and amended filing is the addition of one paragraph which states as follows: "The Aja Evans complaint admits that she that there is [sic] no action of vicarious liability by the second paragraph 79 of her complaint by which she admits that all she complains about is due to personal sexual gratification." Dkt. No. 51 at 1.

First, the amended filing does not cure the prior deficiencies of failing to set forth the facts in numbered paragraphs, each with a short concise statement.  Second, Defendant Pro Chiropractic's additional paragraph consists of a legal argument, not a statement of fact and is therefore improperly included in a statement of material facts.  *See Stone v. Town of Cicero*, No. 5:21-CV-1363, 2024 WL 1219691, *6 n.2 (N.D.N.Y. Mar. 20, 2024) (deeming asserted fact as admitted where the opposition party did not object but responded with a legal argument because "a statement of material facts is not the place for the assertion of legal arguments") (citations omitted).

Defendant Pro Chiropractic's motion for summary judgment can be denied solely for its failure to submit a proper and complete statement of material facts.  *See* N.D.N.Y. L.R. 56.1(a). Nevertheless, the Court notes an additional problem with the counseled motion: it is premature. Discovery has not yet concluded in this matter as the discovery deadline is May 6, 2025.  *See* Dkt. No. 41.  As affirmed by one of Plaintiff's attorneys, there has been minimal written discovery exchanged between the parties and no depositions have been taken.  *See* Dkt. No. 48-7 at ¶ 7.

"The Second Circuit has denied motions for summary judgment as premature in cases where nonmoving party did not have 'a fully adequate opportunity for discovery,' . . . at the time the moving party sought summary judgment."  *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 8 (N.D.N.Y. 2000) (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)) (citations omitted); *see also Doe v. Trustees of Columbia Univ. in City of New York*, No. 21-CV-05839, 2021 WL 4267638, *1 (S.D.N.Y. Sept. 16, 2021) ("[C]ourts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete or until the nonmoving party has had time to file a responsive pleading"); *Johnson v. Mason*, No. 9:22-CV-590, 2024 WL 396679, *6 (N.D.N.Y. Feb. 2, 2024).

As Defendant Pro Chiropractic failed to comply with the Local Rule regarding its statement of material facts and its motion is premature, the Court denies the motion for summary judgment at this juncture.[2]

## C.    Plaintiff's Motion to Amend Complaint

In addition to opposing Defendants USOPC and USABS' motions to dismiss, Plaintiff moves to amend her complaint.  *See* Dkt. No. 47.

---

[2] Because the motion is denied as premature, the Court declines to consider Defendants' alternative arguments.  *See Johnson*, 2024 WL 396679, at *6, n.2.

11

"Where, as here, 'a plaintiff seeks to amend [the] complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Krul v. Brennan*, 501 F. Supp. 3d 87, 95 (N.D.N.Y. 2020) (quoting *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 358 (N.D.N.Y. 2017)).  "After the twenty-one day period in which to serve an amendment as of right has expired, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave to amend when justice so requires.'" *Id.* (quoting FED. R. CIV. P. 15(a)(2)).  "The Second Circuit has explained that 'district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility.'" *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 367 (N.D.N.Y. 2021) (quoting *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000)).

The only Defendant to file a response to Plaintiff's motion is Pro Chiropractic.  *See* Dkt. No. 54.  Pro Chiropractic's 177-page opposition consists primarily of copies of Plaintiff's complaint and amended complaint, as well as Pro Chiropractic's motion for summary judgment and reply.  *See id.*  It also submits a three-page "Affirmation in opposition to Plaintiff's motion to amend ITC complaint."  *Id.* at 1.  In his "affirmation," Pro Chiropractic's counsel states "[t]his opposition is due to [the proposed amended complaint] containing allegations against defendant Pro Chiropractic, as the employer of its employee, defendant, Jonathan Wilhelm, notwithstanding the fact that presently before this court is Pro Chiropractic's fully submitted motion for summary judgment that is awaiting this court's decision."  *Id.* at ¶ 3.  He argues that if the Court grants the motion for summary judgment, Plaintiff's proposed amended complaint is frivolous.  *See id.*  He calls Plaintiff's allegations "offensive" and contends that Plaintiff's "complaint alleges actions that

are personal and not, in any way, for the benefit of the employer or to further the employer's business." *Id.* at ¶¶ 4, 6.

First, counsel's affirmation is inappropriate because affirmations are not the place to present legal arguments. *See* N.D.N.Y. L.R. 7.1(b)(2); *see also Leroy v. Livingston Manor Cent. Sch. Dist.*, No. 21-CV-6008, 2024 WL 1484254, *6 (S.D.N.Y. Apr. 5, 2024) ("Given that portions of Dorfman's declaration consist entirely of legal argument and legal conclusions, the Court may properly strike those portions from the record") (collecting cases); *Lopez v. Metro & Graham LLC*, No. 22-CV-332, 2022 WL 18809176, *3 (E.D.N.Y. Dec. 16, 2022) ("Although Plaintiff's counsel submitted an attorney declaration in support of the Motion containing his legal argument . . . such an affirmation does not take the place of a memorandum of law").

Second, as explained, the Court is denying Defendant Pro Chiropractic's motion for summary judgment. Therefore, its sole argument concerning frivolousness is without merit.

In its reply, USOPC acknowledges Plaintiff's first amended complaint and "has attempted to address the new allegations in the [first amended complaint] to show that amendment would be futile." Dkt. No. 55 at 5 n.1. USOPC states that it "reserves the right to seek leave to file a renewed motion to dismiss to address the deficiencies in the [first amended complaint] more fully, given the space constraints applicable to this reply brief." *Id.* USOPC never filed a response to Plaintiff's motion to amend. Upon the filing of Plaintiff's motion, a response deadline was automatically set for April 8, 2024. *See* Dkt. No. 47. USOPC did not exercise the option to file a response. It also never sought leave from the Court to file a larger brief in reply. As such, the Court will not permit USOPC to file a renewed motion to dismiss Plaintiff's first amended complaint as it had more than sufficient opportunities to oppose the filing.

Next, for the reasons discussed later in this Memorandum-Decision and Order, the Court concludes that amendment is not futile because the first amended complaint establishes sufficient allegations for some of Plaintiff's claims to proceed.  As no party has established that amendment would be dilatory, futile, prejudicial, or in bad faith, the Court grants Plaintiff's motion to amend. The Court will consider Plaintiff's proposed first amended complaint, *see* Dkt. No. 47-2, when ruling on the pending motions to dismiss.  *See Exec. Trim Constr.*, 525 F. Supp. 3d at 367 ("Here, since Defendants had adequate notice and time to respond to the proposed amended complaint, the Court will consider the motion to dismiss in light of the new allegations") (citing *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 226 (E.D.N.Y. 2015); *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 338 (E.D.N.Y. 2014)).

### D.      USOPC and USABS Motions to Dismiss

#### 1. Statute of Limitations

USABS argues that "certain of Plaintiff's claims that were time-barred at the time Plaintiff filed suit in September 2023 must be dismissed as the [Adult Survivors Act ("ASA")] does not apply to these claims."  Dkt. No. 38-1 at 18 (footnote omitted).  Plaintiff's allegations of misconduct span from 2013 to 2018, and then July and September 2022.  *See id.* at 18-19 (citations omitted).  Plaintiff filed her complaint in state court on September 20, 2023.  *See* Dkt. No. 2.  USABS contends that the ASA went into effect in November 2022 which revived otherwise time-barred claims.  *See* Dkt. No. 38-1 at 19.  It contends that the revival statute did not apply to claims which were not time-barred in November 2022.  *See id.*  As such, USABS argues that Plaintiff's claims from July and September 2022 are time-barred by the applicable one-year statute of limitations and cannot be revived by the ASA.  *See id.* at 19-20.

Plaintiff argues that USABS misunderstands the ASA because November 2022 was not when the statute took effect, but when the revival period began. *See* Dkt. No. 46 at 28. Therefore, Plaintiff contends that she had until November 14, 2023, to file her claims. *See id.* Plaintiff also avers that each incident is not subject to an independent statute of limitations review because the conduct, collectively, gives rise to liability. *See id.* She argues, therefore, that all of her claims are timely.

"A cause of action for sexual assault is subject to a one-year statute of limitation in New York." *Leib-Podry v. Tobias*, No. 22-CV-8614, 2024 WL 1421152, *7 (S.D.N.Y. Feb. 13, 2024) (citing, *inter alia*, *Krioutchkova v. Gaad Realty Corp.*, 28 A.D.3d 427, 428 (2d Dep't 2006)); *see also* N.Y. C.P.L.R. § 215(3)). "The ASA 'created a one-year revival period, starting November 24, 2022, during which adult survivors of sexual assault could sue their abusers despite the expiration of the previously applicable statutes of limitations.'" *Johnson v. NYU Langone Health*, No. 22-CV-09456, 2023 WL 6393466, *2 (S.D.N.Y. Sept. 30, 2023) (quoting *Carroll v. Trump*, 650 F. Supp. 3d 213, 218 (S.D.N.Y. 2023)). "For a claim to be revived pursuant to the ASA, a defendant's underlying conduct must 'constitute a sexual offense as defined in article one hundred thirty of the penal law' and have been 'committed against such person who was eighteen years of age or older.'" *Id.* (quoting N.Y. C.P.L.R. § 214-j).

Plaintiff alleges that Defendant Wilhelm's conduct constitutes forcible touching in violation of New York Penal Law § 130.52. *See* Dkt. No. 47-2 at ¶ 97; *see also* Dkt. No. 46 at 28. USABS does not disagree that Plaintiff alleges such qualifying conduct, but argues that the ASA does not save certain time-barred claims. *See* Dkt. No. 38-1.

The ASA states, in relevant part, as follows:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.

N.Y. C.P.L.R. § 214-j.

USABS argues that Plaintiff cannot bring her claims from acts in 2022 because they were not time barred in November 2022 and the ASA only allows for the revival of a claim "which is barred as of the effective date of this section." *Id.*; *see also* Dkt. No. 38-1 at 19. However, the ASA also states that a claim may be filed wherein "the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim." N.Y. C.P.L.R. § 214-j. As Plaintiff avers, she previously failed to file a notice of claim or a notice of intention to file a claim. *See* Dkt. No. 46 at 29. USABS does not address this route for claim revival despite the plain language of the statute stating that a plaintiff may revive a claim if it was time barred "and/or" the plaintiff failed to file a notice of claim. N.Y. C.P.L.R. § 214-j. USABS does not disagree with Plaintiff's averment. *See* Dkt. No. 38-1. Because Plaintiff failed to previously file her notice of claim or notice of intention to file a claim, the ASA permitted her to file her claims so long as they were filed "not earlier than six months after, and not later than one year and six months after the effective date of this section." N.Y. C.P.L.R. § 214-j. The effective date is May 24, 2022. *See id.*

Plaintiff filed her state court complaint one year and five months later.  *See* Dkt. No. 2.

Accordingly, her claims are timely and USABS' motion to dismiss is denied on this ground.

Alternatively, USABS argues that the ASA is unconstitutional.  *See* Dkt. No. 38-1 at 20.

USABS argues that the statute violates the Due Process Clause of the New York State

Constitution because the justifications underlying its implementation are not "exceptional

circumstances" warranting claim revival.  *Id.* at 21.

"'It is well settled that legislative enactments are entitled to a strong presumption of

constitutionality.'"  *Matarazzo v. Charlee Fam. Care, Inc.*, 218 A.D.3d 941, 943 (3d Dep't 2023)

(quoting *White v. Cuomo*, 38 N.Y.3d 209, 216 (2022)).  "Since 'facial challenges to statutes are

generally disfavored' . . . a party making a facial challenge has the 'extraordinary burden . . . of

proving beyond a reasonable doubt that the challenged provision suffers wholesale constitutional

impairment.'"  *Id.* (quotations omitted).  "As relevant here, 'a claim-revival statute will satisfy the

Due Process Clause of the [New York] Constitution if it was enacted as a reasonable response in

order to remedy an injustice.'"  *Id.* (quoting *Matter of World Trade Ctr. Lower Manhattan

Disaster Site Litig.*, 30 N.Y.3d 377, 400 (2017)).[3]

Recently, a court in the Southern District of New York rejected USABS' precise argument

and concluded that the ASA's one-year revival statute is constitutional.  *See Carroll*, 650 F. Supp.

---

[3] USABS argues that "the Due Process Clause in the New York State Constitution allows for
revival of time-barred claims only in exceptional circumstances, where claimants were previously
prevented in some specific manner from asserting timely claims," and cites case law from 1878.
Dkt. No. 38-1 at 21-22.  The New York Court of Appeals addressed the "exceptional
circumstances" standard as well as other standards applied by courts in the context of claim-
revival statutes in *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377,
399 (2017).  The court concluded that "a claim-revival statute will satisfy the Due Process Clause
of the State Constitution if it was enacted as a reasonable response in order to remedy an
injustice."  *Id.* at 400.  Therefore, this is the standard that the Court will apply to USABS' facial
challenge.

3d at 224-25.  The court did so by comparing the ASA to a similar statutory analog, the Child

Victims Act, which increased "the criminal and civil statutes of limitations for child sexual

offenses, and create[ed] a one-year window for the revival of otherwise time-barred child sexual

abuse-re-lated [sic] lawsuits."  *Carroll*, 650 F. Supp. 3d at 220 (quoting N.Y. Comm. Rept., 2021

NY S.B. 66 (NS)).  The *Carroll* court explained that "the claim revival provision of the ASA

[cannot] be distinguished from that in the Child Victims Act on th[e] basis that adult survivors –

unlike child victims, who are not permitted to bring lawsuits until they reach adulthood – are not

legally disabled from suing immediately following the alleged sexual abuse."  *Id.* at 223.

Courts have repeatedly concluded that the Child Victims Act and its revival provision are

constitutional.  *See Farrell v. United States Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378,

393 (N.D.N.Y. 2021); *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 455 (S.D.N.Y. 2022); *PC-41 Doe

v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 565 (E.D.N.Y. 2021); *Montague v.

Williams*, No. 21-CV-4054, 2023 WL 2710320, *11 (E.D.N.Y. Mar. 30, 2023), *appeal

withdrawn*, No. 23-750, 2023 WL 7298782 (2d Cir. Aug. 18, 2023).  Although the Child Victims

Act pertains to victims under eighteen and the ASA pertains to victims who are over eighteen,

their practical impact is the same by allowing a one-year window for the revival of otherwise

time-barred sexual abuse-related claims.  As the *Carroll* court explained, the New York Court of

Appeals has upheld the constitutionality of revival statutes where "the Legislature properly

determined that it would be more fair for *all* plaintiffs to uniformly now have one year to bring

their actions, rather than for the courts to begin drawing arbitrary lines transecting this area's

shades of gray."  *Hymowitz*, 73 N.Y.2d at 515; *see also Carroll*, 650 F. Supp. 3d at 223.

To oppose the constitutionality of the ASA, USABS primarily relies on two cases:

*Zumpano v. Quinn*, 6 N.Y.3d 666 (2006); *In re World Trade Ctr. Lower Manhattan Disaster Site*

*Litig.*, 66 F. Supp. 3d 466 (S.D.N.Y. 2014).  *See* Dkt. No. 38-1 at 21-22.  Neither case is

persuasive.  *Zumpano* concerned equitable tolling and did not discuss revival statutes.  *See*

*Zumpano*, 6 N.Y.3d at 671 ("At the outset, we note that these cases present only the legal question

whether equitable estoppel applies to toll the statutes of limitations for plaintiffs' claims").  The

court in *In re World Trade Ctr.*, determined that a claim revival statute did not present "[t]he

'exceptional' circumstances or 'serious injustice' that the New York Court of Appeals has required

for nearly 100 years."  *In re World Trade Ctr.*, 66 F. Supp. 3d at 476 (S.D.N.Y. 2014).  However,

USABS fails to discuss that this determination was vacated and remanded by the Second Circuit.

*See* Dkt. No. 38-1 at 21-22.  Specifically, following an appeal from the Southern District of New

York's opinion, the Second Circuit certified two questions to the New York Court of Appeals:

> (1) Before New York State's capacity-to-sue doctrine may
> be applied to determine whether a State-created public benefit
> corporation has the capacity to challenge a State statute, must it first
> be determined whether the public benefit corporation "should be
> treated like the State," . . . based on a "particularized inquiry into
> the nature of the instrumentality and the statute claimed to be
> applicable to it," . . . and if so, what considerations are relevant to
> that inquiry?; and
>
> (2) Does the "serious injustice" standard articulated in
> *Gallewski v. H. Hentz & Co.* [301 N.Y. 164], 93 N.E.2d 620 (N.Y.
> 1950), or the less stringent "reasonableness" standard articulated in
> *Robinson v. Robins Dry Dock & Repair Co.* [238 N.Y. 271], 144
> N.E. 579 (N.Y. 1924), govern the merits of a due process challenge
> under the New York State Constitution to a claim-revival statute?

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 892 F.3d 108, 110 (2d Cir. 2018)

(alterations in original).  The New York Court of Appeals answered the Second Circuit's

questions as follows:

> "[N]o 'particularlized [sic] inquiry' is necessary to determine
> whether public benefit corporations should be treated like the State
> for purposes of capacity."  *Matter of World Trade Ctr. Lower*

*Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 383, 89 N.E.3d 1227 (2017).  As a result, a public benefit corporation is treated like any other state entity and is subject to the "general rule" that "state entities lack capacity to challenge the constitutionality of a state statute," with only a few "narrow" exceptions.  *Id.* at 383, 387, 89 N.E.3d 1227.

The Court reformulated the second question to ask "[u]nder *Robinson* and *Gallewski*, what standard of review governs the merits of a New York State Due Process Clause challenge to a claim-revival statute?"  *Id.* at 394, 67 N.Y.S.3d 547, 89 N.E.3d 1227 (internal quotation marks omitted).  The Court then held that "a claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice."  *Id.* at 400, 67 N.Y.S.3d 547, 89 N.E.3d 1227.

*Id.* at 110-11.  Utilizing these answers, the Second Circuit concluded that the "[Battery Park City Authority] does not qualify for any exception to the general rule that state entities lack the capacity to raise constitutional challenges to state statutes, and its challenge to [the revival statute] must therefore be rejected.  Accordingly, we need not reach the question whether that law is consistent with the Due Process Clause of the New York State Constitution."  *Id.* at 111.

Therefore, the most recent disposition in that case does not support USABS' position because (1) the Second Circuit vacated the Southern District of New York's conclusion; and (2) the New York Court of Appeals has clarified the appropriate standard to apply to facial challenges to revival statutes.

With this background in mind, the Court easily concludes that the ASA "was enacted as a reasonable response in order to remedy an injustice."  *In re World Trade Ctr.*, 30 N.Y.3d at 400.  The New York Legislature identified the injustice as being against "'[t]hose who have had justice denied them as a result of New York's formerly insufficient statutes of limitations should be given the opportunity to seek civil redress against their abuser or their abuser's enablers in a court of

20

law.'"  *Carroll*, 650 F. Supp. 3d at 219 (quoting N.Y. Comm. Rept., 2021 NY S.B. 66 (NS)).

Allowing for a one-year window to revive such claims is a reasonable response to correct such

injustices—just as it has been repeatedly upheld when considering the Child Victims Act.  *See*

*J.S.M. v. City of Albany Dep't of Gen. Servs.*, 211 N.Y.S.3d 859, 868 (N.Y. Sup. Ct. 2024); *Wilkie*

*v. Vill. of Hempstead*, No. 22-CV-920, 2023 WL 5952056, *9 (E.D.N.Y. June 20, 2023)

(analyzing application of the ASA to a plaintiff's claims); *C.L. v. Cnty. of Oneida*, 212 N.Y.S.3d

533, 541 (N.Y. Sup. Ct. 2024) (same); *Urena v. State*, No. 139003, 2024 WL 3750929, at *4

(N.Y. Ct. Cl. July 31, 2024).

      Based on the foregoing, the Court denies USABS' motion to dismiss on this ground.

### 2. Plaintiff's Theories of Liability Against USABS and USOPC

      In her first amended complaint, Plaintiff alleges the following claims against USABS and

USOPC: negligence and *respondeat superior*; negligent hiring, retention, training, education, and

supervision; premises liability as to USOPC; and negligent failure to warn or protect.  *See* Dkt.

No. 47-1 at ¶¶ 98-142.

#### a. Respondeat Superior

      Count two of Plaintiff's complaint alleges "Negligence and Respondeat Superior as to All

Defendants."  Dkt. No. 2 at ¶¶ 90-98.  USOPC and USABS separately move to dismiss count two

on the same grounds: they cannot be held liable for Defendant Wilhelm's conduct under a

*respondeat superior* theory of liability.  *See* Dkt. No. 37-1 at 9; Dkt. No. 38-1 at 11.  USOPC

argues that it does not have an employer-employee relationship with Wilhem to create such

liability.  *See* Dkt. No. 37-1 at 9-11.  It also contends that even if such a relationship existed,

Defendant Wilhelm was not acting within the scope of his employment.  *See id.* at 11-12.

USABS argues that Plaintiff fails to allege Defendant Wilhelm was acting within the scope of his

employment. *See* Dkt. No. 38-1 at 12-13. USABS does not dispute that it had an employer-employee relationship with Defendant Wilhelm but refers to Defendant Wilhem as "its supposed agent[.]" *Id.* at 13. Plaintiff argues that Wilhelm has an employee-employer relationship with USOPC and USABS and that he was acting within the scope of his employment during the alleged assaults. *See* Dkt. No. 45 at 12-19; Dkt. No. 46 at 12-19.

As to Plaintiff's *respondeat superior* claims, the Court declines to address whether Wilhelm has an employer-employee relationship with USOPC because, as both USOPC and USABS argue, Plaintiff has not sufficiently alleged that Wilhelm's alleged conduct occurred within the scope of his employment.[4]

"'[W]here an employee's actions are taken for wholly personal reasons, which are not job related, the challenged conduct cannot be said to fall within the scope of employment.'" *Browne v. Lyft, Inc.*, 219 A.D.3d 445, 446 (2d Dep't 2023) (quoting *Montalvo v. Episcopal Health Servs., Inc.*, 172 A.D.3d 1357, 1360 (2d Dep't 2019)). "'New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context.'" *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (quoting *Ross v. Mitsui Fudosan*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)). "And 'it is well-settled in the Second Circuit that employers are not liable to plaintiffs for sexual assaults under a theory of *respondeat superior* since sexual misconduct is necessarily outside the scope of employment.'" *Wilkie v. Vill. of Hempstead*, No. 22-CV-920, 2023 WL 5952056, *6 (E.D.N.Y. June 20, 2023) (quoting *Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023)).

---

[4] The Court will later address the employer-employee relationship where consideration of the issue is necessary for deciding the pending motions.

Plaintiff alleges that "Defendant Wilhelm groped and abused Plaintiff, and without her consent, to satisfy his own sexual desires.  Defendant Wilhelm's physical contact with Plaintiff was offensive and wrong."  Dkt. No. 47-2 at ¶ 90.  This allegation reflects that Wilhem's alleged conduct had nothing to do with his employment; it was for his own personal desires.  As explained, such conduct has been repeatedly held insufficient to state a vicarious liability claim. Plaintiff has not presented contrary authority.  Rather, Plaintiff argues that Wilhelm was acting within the scope of his employment because the alleged conduct occurred during treatment sessions, at the USOPC Training Center, and Wilhelm was "careful not to depart significantly from normal methods of performance."  Dkt. No. 45 at 15; *see also* Dkt. No. 46 at 13-19.  None of Plaintiff's case citations support the extension of vicarious liability to USOPC or USABS for Wilhelm's alleged sexual abuse.

First, Plaintiff cites *In re USA Gymnastics*, 40 F.4th 775 (7th Cir. 2022), to comment on how "it is more common than it should be for osteopathic physicians for Olympic teams to sexually assault players under the guise of treatment."  Dkt. No. 45 at 15.  In that case, the Seventh Circuit was discussing whether a potential claimant in bankruptcy court "was entitled to actual notice because USA Gymnastics should have known that she was a potential claimant."  *In re USA Gymnastics*, 40 F.4th at 776.  The Seventh Circuit did not discuss vicarious liability. Next, Plaintiff cites *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247 (2002), *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932 (N.Y. 1999), and *Kirkman by Kirkman v. Astoria Gen. Hosp.*, 203 A.D.2d 401 (2d Dep't 1994).  *See* Dkt. No. 45 at 17.

In *Cabrini*, the plaintiff alleged that a surgical resident who was not assigned to her case sexually assaulted her while in a recovery room at Cabrini Medical Center.  *See Cabrini*, 97 N.Y.2d at 251.  The New York Court of Appeals affirmed dismissal of the plaintiff's vicarious

liability claim but reinstated her direct negligence cause of action. *See id.* at 252. As for the vicarious liability claim, the court stated that "[a] sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is a clear departure from the scope of employment, having been committed for wholly personal motives." *Id.* at 251 (citation omitted). *Cabrini* also discusses *Judith M.*, wherein the New York Court of Appeals "rejected a claim of vicarious liability on similar facts. There, an orderly assigned to bathe a patient sexually abused her while doing so. [The Court of Appeals] held that the employee 'departed from his duties for solely personal motives unrelated to the furtherance of the Hospital's business.'" *Id.* (citing *Judith M.*, 93 N.Y.2d at 933).

Finally, in *Kirkman*, the plaintiffs sued the defendant hospital "after the minor plaintiff was raped by a security guard, employed by the Burns International Security Services, on duty at Astoria General Hospital where the minor plaintiff had been visiting a patient." *Kirkman*, 204 A.D.2d at 402. The court concluded that "since the service contract between Burns and the hospital clearly indicated that the security personnel working at the hospital were employed by, and under the direct supervision of, Burns, the hospital cannot be held vicariously liable for the acts of the Burns employee as a matter of law." *Id.*

Plaintiff argues that "[n]ot one of those cases—nor any of the federal cases USOPC cites—considered a sexual assault that happened during a physician's hands-on treatment that was otherwise authorized and occurred on the [] premises where it was sanctioned." Dkt. No. 45 at 17. Plaintiff also argues that "none [of the cases] analyze or distinguish what would further the defendants' business from what would not. Thus, these cases do not control whether Wilhelm's sexual assault was a 'generally foreseeable and a natural incident of the employment'—i.e., within the scope." *Id.* (quoting *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 603 (N.D.N.Y. 2016)).

24

In *Benacquista*, the court reiterated the "well-settled principle[] of law," that "'[n]o decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault.' . . .  As other courts have noted, this *de facto* bar to vicarious liability in sexual assault cases exists because that sort of misconduct 'is a clear departure from the scope of employment, having been committed for wholly personal motives.'"  *Benacquista*, 217 F. Supp. 3d at 604 (quoting *Alsaud*, 12 F. Supp. 3d at 677).

Plaintiff has not presented a single case that has allowed a *respondeat superior* claim to proceed based on an employee tortfeasor's sexual abuse.  Insofar as Plaintiff attempts to distinguish this settled case law, she asserts that none of the cases concern physicians who were treating the plaintiff.  This is an accurate statement.  The cases that Plaintiff cites do not concern a physician and a patient.  However, *Judith M.* is analogous because the orderly was assigned to bathe the plaintiff.  It was during that bath, which was part of his job, that he sexually abused the plaintiff.  *See Judith M.*, 93 N.Y.2d at 933-34.  Although he was not a doctor, the orderly was still performing his job when he deviated from his duties to the extreme degree of committing sexual abuse.

Plaintiff's allegations are similar: she alleges that Wilhelm was performing his job as a treatment provider for the U.S. Women's Bobsled team when he deviated from his duties and sexually assaulted her.  Although the actions occurred within the universe of providing treatment, *i.e.*, his job, courts have consistently concluded that such conduct does not occur within the scope of employment and therefore cannot be the basis for vicarious liability.  *See Doe v. Rohan*, 17 A.D.3d 509, 512 (2d Dep't 2005); *Dia CC v. Ithaca City Sch. Dist.*, 304 A.D.2d 955, 956 (3d Dep't 2003); *Poppel v. Est. of Archibald*, No. 1:19-CV-01403, 2020 WL 2749719, *5-6 (S.D.N.Y. May 27, 2020); *Paul J.H. v. Lum*, 291 A.D.2d 894, 894 (4th Dep't 2002).

Accordingly, the Court grants this aspect of USOPC and USABS' motions to dismiss.

### b. Hiring, Retention, Training, and Supervision

"'In instances where[,as here,] an employer cannot be held vicariously liable for its employee's torts [because they occur outside the scope of his employment], the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision.'" *Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 260-61 (S.D.N.Y. 2010) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161, 654 N.Y.S.2d 791 (2d Dep't 1997)) (footnote omitted).

USOPC quotes a Second Circuit cases which sets forth the relevant factors for this claim as follows:

> "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels."

Dkt. No. 37-1 at 13 (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

At least one New York court has questioned *Ehren*'s accuracy in stating that third factor of a negligent hiring, training, and retention claim. *See Sokola v. Weinstein*, 78 Misc. 3d 842, 850 (N.Y. Sup. Ct.), *appeal withdrawn*, 219 A.D.3d 1185 (2023) (concluding that the Second Circuit incorrectly set forth the third factor concerning "premises" or "chattels" and declaring that "it is this Court's view that any cases citing *Ehrens* in support of the recitation of the elements of a negligent hiring, supervision, or retention claim, should not be followed").  This, however, does not impact the Court's analysis because the parties focus on the first two prongs: USOPC argues

that it was not in an employer-employee relationship with Wilhem, and USOPC and USABS

argue that they did not have sufficient knowledge of Wilhelm's alleged conduct to be liable for

negligent hiring, training, or retention.  *See* Dkt. No. 37-1 at 13-17; Dkt. No. 38-1 at 13-16.

"'An employer may be liable for a claim of negligent hiring or supervision if an employee

commits an independent act of negligence outside the scope of employment and the employer was

aware of, or reasonably should have foreseen, the employee's propensity to commit such an act.'"

*PB-20 Doe v. St. Nicodemus Lutheran Church*, 228 A.D.3d 1233, 1234 (4th Dep't 2024) (quoting

*Walden Bailey Chiropractic, P.C. v. GEICO Cas. Co.*, 173 A.D.3d 1806, 1806-1807 (4th Dep't

2019)).  "'The employer's negligence lies in having placed the employee in a position to cause

foreseeable harm, harm which would most probably have been spared the injured party had the

employer taken reasonable care in making decisions respecting hiring and retention of the

employee.'"  *Id.* (quoting *Druger v. Syracuse Univ.*, 207 A.D.3d 1153, 1154 (4th Dep't 2022)).

"Indeed, 'it is essential, at the very least, that the person for whose negligent conduct the

[defendant] is sought to be charged be engaged in its service.'"  *Id.* (quoting *Rosensweig v. State

of New York*, 5 N.Y.2d 404, 409 (1959)).  "In deciding whether an employment relationship

exists, we consider, inter alia, who controls and directs the manner, details, and ultimate result of

the employee's work."  *Id.* (citations omitted); *see also Olsen v. Butler*, 227 A.D.3d 916, 918 (2d

Dep't 2024) (stating the same requirements).

However, as noted by the Second Circuit, "[a]lthough [it has] never held that supervisory

liability can attach outside the context of the employer-employee relationship, and, indeed, [it

has] suggested the opposite, . . . several New York courts . . . have recognized such an exception."

*Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 130 (2d Cir. 2023) (internal citation omitted); *see

Bellere v. Gerics*, 304 A.D.2d 687, 688 (2d Dep't 2003) ("The general rule is that a party who

employs an independent contractor is not liable for the contractor's negligent acts since the party

has no right to control the manner in which the work is done. . . .  In contrast, a party may be held

liable for a contractor's negligence under theories of negligent hiring, negligent retention, and

negligent supervision").  The Second Circuit did not "engage with this potential conflict, however,

because the state court cases cited . . . involve relationships in which defendants exercised a high

degree of control over the principal tortfeasors, an allegation that is absent from the amended

complaint." *Fat Brands*, 75 F.4th at 130.  Neither USOPC nor Plaintiff discuss this "potential

conflict." *Id.*; *see also* Dkt. Nos. 37-1, 45.  Rather, Plaintiff argues that her complaint sufficiently

alleges that "Wilhelm was an employee or agent of both USABS *and* USOPC."  Dkt. No. 45 at

21.

Plaintiff correctly states that the determination of whether an individual is an employee

requires consideration of "'(1) the selection and engagement of the servant; (2) the payment of

salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's

conduct.'"  *Id.* at 12 (quoting *Griffin v. Sirva, Inc.*, 76 N.E.3d 1063, 1069 (N.Y. 2017)).

Plaintiff alleges in her first amended complaint that "Defendant John Wilhelm was an

osteopathic medical provider for the USA Bobsled Team(s) that operate under the USOPC.

Defendant Wilhelm was at all times relevant an Olympic osteopathic provider, and still maintains

those and/or similar positions currently."  Dkt. No. 47-2 at ¶ 30.  She avers that Wilhelm was

appointed to the Traveling USA Bobsled Team in 2018, but "[p]rior to that appointment, Wilhelm

served as one of a few high-performance treatment providers for the USA Bobsled Team at

various training and competition events around the country, including at the USOPC training

facility for USA Bobsled in Lake Placid, New York."  *Id.* at ¶ 31.  Plaintiff explains that

"Wilhelm began working as a treatment provider for Team USA on or about 2012.  Wilhelm

began directly working for USOPC in August 2013 as a USOPC intern at the US Olympic Complex in Colorado Springs (the main USOPC complex for all Olympic sports)."  *Id.* at ¶ 33. Plaintiff describes his "employment duties" as

> coordinating the care for USA Bobsled at every national and international competition, providing individual care and providing for the physical needs and well-being of participants and members of USA Bobsled (and in accordance with Defendant USOPC policies, procedures, and mandates), and care including but not limited to osteopathic adjustments and kinesiology treatment to participants and members of USA Bobsled, which included Plaintiff.

*Id.* at ¶ 33.

Plaintiff alleges that "USOPC and USABS are profoundly connected."  *Id.* at ¶ 34.  She contends that both entities benefit from the other and that "USOPC has ultimate authority over an NGB like USABS—the authority to create and control its very existence.  The USOPC requires USABS to be appropriately staffed to effectively execute USOPC requirements and the Act."  *Id.* at ¶ 35.  Plaintiff avers that "USOPC made recommendations for how USABS hires and evaluates its CEO.  USOPC also said that USABS has been working with the USOPC Sport Performance team to develop an athlete pathway that clarifies progression through the sports of bobsled and skeleton."  *Id.*  "The investigation further found that USABS was not complying with some of its obligations and that, in order to maintain its certification as an NGB, it had to adopt, implement, and execute certain USOPC requirements in a timely manner, before its renewal process in 2024." *Id.*

Plaintiff also alleges that "USABS and USOPC share many of the same employees or agents, including specifically Wilhelm.  Both USABS and USOPC staff collectively schedule sports medicine providers for team camps and competitions.  USABS depends on USOPC for

funding to pay for athletes' travel and to pay medical providers selected to treat patients." *Id.* at ¶

37.  She contends that "USOPC directly oversees team members, requiring them to be treated and

monitored by their own sports psychologists, including Alex Cohen, USOPC Sr. Sports

Psychologist, and USOPC Senior Mental Health Provider Taryn Brandt, who was also providing

Jon [Wilhelm] services at the Lake Placid Center." *Id.*  Plaintiff cites a news article in her

complaint, which named Wilhelm as a top medical provider "on behalf of the USOPC." *Id.* at ¶

39.[5]  The article is titled, "*USOPC Sports Medicine invites Dr. Wilhelm to support USA Bobsled*

*Skeleton Athletes at the USABS 2022 Push Championships*."  EIN Presswire, Nexstar Media Inc.,

(Jan. 5, 2023, 3:43 PM) https://www.kxan.com/business/press-releases/ein-

presswire/609742559/usopc-sports-medicine-invites-dr-wilhelm-to-support-usa-bobsled-skeleton-

athletes-at-the-usabs-2022-push-championships/.  It states, among other things, as follows:

> This is where Dr. Jon Wilhelm comes in; he was the single out-of-
> state sports medicine practitioner that was chosen to fly in to look
> after and care for USA Bobsled Skeleton athletes.  That is no small
> feat in itself, it shows tremendous trust from USOPC Sports
> Medicine in Dr. Wilhelm for his ability to serve some of the world's
> greatest athletes. . . .  This marks his ninth consecutive season his
> expertise has been requested with the USABS (USA Bobsled
> Skeleton) National Team. . . .  With that much talent sliding around,
> USOPC wanted the very best in sports medicine to watch over the
> event and help the athletes that need it so, naturally, Dr. Wilhelm
> was the first and only call Ben Towne, ATC, USOPC sports
> medicine athletic trainer, made to a non-local sports medicine
> practitioner.

*Id.*  Although this article was written on January 5, 2023, it supports Plaintiff's allegations

concerning the relationship between USABS, USOPC, and Wilhelm.  Plaintiff also alleges that

---

[5] "'In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a
district court may consider the facts alleged in the complaint, documents attached to the complaint
as exhibits, and documents incorporated by reference in the complaint.'"  *United States ex rel.
Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104, 111 (2d Cir. 2010)).

one of the instances wherein Wilhelm recorded Plaintiff and her teammates was while Plaintiff "was in her bra, spandex, [and] the treatment table was facing the camera [while] her legs were open" and that this occurred in view of USOPC staff. *Id.* at ¶ 54.

In arguing that there is no employer-employee relationship between USOPC and Wilhelm, USOPC relies on a very similar case from the California Court of Appeals. *See* Dkt. No. 37-1 at 20 (citing *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077 (2019)); *see also* Dkt. No. 55 at 6-8. In *Brown*, the plaintiffs sued their taekwondo coach, the United States Olympic Committee ("USOC"), and USA Taekwondo ("USAT"), arising from their coach's sexual abuse. *Brown*, 40 Cal. App. 5th at 1082. The plaintiffs alleged that a special relationship did exist with USOC because it "had authority to certify or decertify national governing bodies, including USAT; USOC mandated national governing bodies adopt a safe sport program by 2013; and Gitelman's sexual abuse of plaintiffs occurred at taekwondo competitions sanctioned by USOC." *Id.* at 1101-02. The court concluded that although USAT "was [] in a unique position to protect taekwondo youth athletes from harm," the Committee "did not owe a duty to plaintiffs because it did not have a special relationship with [the coach] or plaintiffs. Although USOC had the ability to control USAT, including requiring it to adopt policies to protect youth athletes, it did not have direct control over the conduct of coaches." *Id.* at 1083.

These allegations are nearly identical to Plaintiff's allegations. However, Plaintiff includes additional allegations in her first amended complaint that support the Court's conclusion being different from the determination in *Brown*. Here, Plaintiff alleges not only that USOPC has control over USABS, but that Plaintiff and her teammates complained of Wilhelm's conduct directly through a USOPC online portal, Plaintiff's teammate e-mailed a USOPC employee directly to complain about Wilhelm being reselected and the lack of consideration for the Team's

safety, and USOPC publicly proclaimed that it chose Wilhelm to work with USABS.  *See* Dkt. No. 47-2 at ¶¶ 39, 54, 60.  Plaintiff also alleges that USOPC had control over USABS' personnel as demonstrated by USOPC investigating USABS for "management concerns" as a result of which USOPC issued a Demand for Immediate Reform.  *Id.* at ¶ 84.  USOPC encouraged USABS to "build on its efforts to foster diversity by recruiting more diverse candidates for open Board, management, and staff positions." *Id.*

The Court concludes that there are sufficient allegations at this early stage to establish an employer-employee relationship between USOPC and Wilhelm.  *See Pamela O. v. Auburn Enlarged City Sch. Dist.*, 82 Misc. 3d 1224, 206 (N.Y. Sup. Ct. 2024) (allowing negligent supervision and negligent retention claims to proceed past summary judgment because "the record evidence adduced by the District on the instant motion reveals that the rumors and gossip concerned sexually inappropriate behavior between Camp and Plaintiff.  Such evidence is sufficient to raise a question of fact as to the District's actual or constructive notice of Camp's alleged propensities"); *Alsaud*, 12 F. Supp. 3d at 680 ("The FAC asserts that '[d]uring the course of his employment, Defendants . . . knew or should have known of [Mr. Ouanes'] predisposition for abusing women, his violent propensities, and his status as a sexual predator, yet did nothing to stop it.'  Notwithstanding Ouanes' alleged predisposition for sexual violence, and the FAC's allegation that '[a] reasonable background check would have reflected the same' . . . the FAC does not allege (i) a single prior act or allegation of sexual misconduct committed by Ouanes; or (ii) a fact suggesting that Saudi Oger knew or should have known of any such prior acts") (citations omitted); *cf. Roe v. Chappaqua Cent. Sch. Dist.*, No. 16-CV-7099, 2017 WL 4119655, *8 (S.D.N.Y. Sept. 15, 2017) (concluding that a plaintiff sufficiently alleged *Monell* liability wherein "[p]laintiff further claims notices of Schraufnagel's inappropriate conduct with students should

have prompted a thorough investigation into Schraufnagel's misconduct.  The amended complaint alleges all of the CCSD defendants were on notice of allegations in 2011 that Schraufnagel had abused a student, and that there were numerous other warnings of inappropriate conduct by Schraufnagel that should have prompted an investigation").

"New York courts . . .  have held in employee sexual misconduct cases that an employer is only liable for negligent supervision if the employer is aware of specific prior acts or allegations against the employee."  *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 390 (E.D.N.Y. 2021) (citing *Alsaud*, 12 F. Supp. 3d at 680-81).  "[I]t is not sufficient for Plaintiff to allege generally that the Defendant failed to exercise care in the screening, hiring, or supervision of employees." *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361 (S.D.N.Y. 2021).  "Plaintiff must also allege that, had the Defendant exercised the requisite care, it would have discovered the facts that made the employee at issue unsuitable to hire or retain." *Id.* at 361-62 (collecting cases); see *also Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923, 2024 WL 2826097, *9 (E.D.N.Y. Mar. 28, 2024), *reconsideration denied*, 2024 WL 2826101 (E.D.N.Y. May 22, 2024) (collecting cases dismissing negligent hiring, training, and retention claims because the "Plaintiff has failed to allege that Defendants were aware of any specific prior acts of sexual abuse or sexual misconduct" by the alleged abuser); *Doe v. Poly Prep Country Day Sch.*, No. 20-CV-04718, 2022 WL 4586237, *9 (E.D.N.Y. Sept. 29, 2022) (same).  Although "[a] cause of action for negligent hiring and retention requires allegations that an employer knew of its employee's harmful propensities, that it failed to take necessary action, and that this failure caused damage to others[,]" "[t]he cause of action does not need to be pleaded with specificity." *Waterbury v. New York City Ballet, Inc.*, 205 A.D.3d 154, 160 (1st Dep't 2022) (citations omitted).

USOPC and USABS argue that they neither knew nor should have known about Wilhelm's alleged conduct such that they cannot be held liable for negligent hiring, training, retention, or supervision. *See* Dkt. No. 37-1 at 14-17; Dkt. No. 38-1 at 13-16.

In Plaintiff's first amended complaint, she alleges that she and her teammates wrote a "complaint letter" during the 2016-2017 year which documented Wilhelm photographing them. Dkt. No. 47-2 at ¶ 53. Plaintiff contends that "[d]espite the complaints by Plaintiff and her teammates, Defendant Wilhelm was not investigated after the 2016—2017 end-of-season review by the USOPC or USA Bobsled. Their complaints were dismissed, and Plaintiff remained confused and afraid to speak out." *Id.* She also states that Wilhelm recorded her and her teammates in 2018 which they noticed and "gave Wilhelm negative surveys reviews via an online USOPC portal." *Id.* at ¶ 54. Plaintiff alleges that "[t]his incident happened in plain view of USABS and USOPC staff." *Id.*

Plaintiff explains that in August 2021, a news report was released explaining a search warrant related to sexual assault allegations brought by a former patient/employee against Wilhelm. *See id.* at ¶ 56. She contends that e-mails from 2013 document Plaintiff and her teammates requesting a different team chiropractor from USOPC. *See id.* at ¶ 58. USOPC told Plaintiff and her teammates that it "would only cover a different provider for 'USA 1s'—Olympic athletes funded with money that comes directly from USOPC. As a result, they proceeded to hire a different provider at their own expense." *Id.* at ¶ 58. In 2021, "US Women's Bobsled Team athlete Lauren Gibbs emailed Andrew Ernst, USABS High Performance Director, and Dr. Eugene Byrne, an orthopedist for Team USA at USOPC's Lake Placid Center. Gibbs expressed on behalf of other teammates that the women were surprised and very disappointed Wilhelm was again appointed to provide them with medical care." *Id.* at ¶ 60. Ms. Gibbs stated that she "really

wish[ed] our safety would have been taken more seriously" and that she was "disappointed that I am being forced to work with someone I have told you multiple times makes me uncomfortable." *Id.*

Plaintiff also alleges that USOPC is fully aware of the national issues concerning sexual abuse in athletic organizations. *See id.* at ¶ 66. Plaintiff explains that it was as a result of a 2010 sexual abuse scandal with USA Swimming, that USOPC created a Director of Ethics and SafeSport position as well as The Center for SafeSport. *See id.* at ¶¶ 68-69. Plaintiff contends that The Center averages eighty-five complaints of sexual abuse per month. *See id.* at ¶ 70.

Plaintiff's allegations concerning USOPC and USABS' knowledge of Wilhelm's alleged abuse is sparse. Plaintiff did not make persistent complaints of the conduct to USOPC or USABS. However, her complaint is sufficient at this stage, accepting her allegations as true, that USOPC and USABS knew or should have known of prior instances of inappropriate and sexualized conduct. Courts have consistently concluded that knowledge of larger, societal, or organizational issues are not sufficient to state a claim. *See Poly Prep Country Day Sch.*, 2022 WL 4586237, at *9; *Guerriero*, 2024 WL 2826097, at *9. Rather, a plaintiff must allege that "the employer is aware of specific prior acts or allegations against the employee." *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 390 (E.D.N.Y. 2021). In other words, "Plaintiff must [] allege that, had the Defendant exercised the requisite care, it would have discovered the facts that made the employee at issue unsuitable to hire or retain." *Uber Techs., Inc.*, 551 F. Supp. 3d at 361.

In its reply, USOPC states that "[g]laringly absent is any allegation that anyone reported the alleged misconduct to the USOPC." Dkt. No. 55 at 10. This contention ignores Plaintiff's allegation about the 2021 e-mail from Ms. Gibbs, which was sent to an orthopedist for Team USA

at USOPC's Lake Placid Center and complained about Wilhelm being reselected to work with the Team despite some of the women expressing discomfort "in the past." Dkt. No. 47-1 at ¶ 60.

USOPC does acknowledge Plaintiff's allegation that the women reported their complaints directly to a USOPC online portal. *See* Dkt. No. 55 at 11 (citing Dkt. No. 47-2 at ¶ 54). However, USOPC and USABS contend that Plaintiff "does not allege that such reviews contained any complaints about Wilhelm's alleged sexual misconduct." Dkt. No. 55 at 11; *see also* Dkt. No. 58 at 10. Paragraph fifty-four of Plaintiff's first amended complaint states in its entirety as follows:

> At the 2018 Olympics in South Korea, Plaintiff was preparing for competition in the start house. Defendant Wilhelm entered the start house as Plaintiff was getting undressed, and propped his phone up where the camera was facing Plaintiff and her teammates, so as to record them as they undressed. At the time team members noticed this, Evans was in her bra, spandex, treatment table was facing the camera and her legs were open. This incident happened in plain view of USABS and USOPC staff. All of the US Women's Bobsled athletes knew about it and many gave Wilhelm negative surveys reviews via an online USOPC portal.

Dkt. No. 47-2 at ¶ 54. Read in context, Plaintiff's complaint alleges that Wilhelm engaged in extremely inappropriate behavior about which the Team complained to USOPC. Although Plaintiff does provide more details about the "negative survey[] reviews," her allegations are sufficient at the pleading stage to put USOPC on notice of her claims which allege that USOPC knew or should have known about Wilhelm's conduct.

Although Plaintiff did not make a report or complain every time the alleged conduct occurred, neither USABS nor USOPC presents authority that a plaintiff must do so in order to put an employer on notice of its employee's conduct. Based on the foregoing, the Court concludes that there are sufficient allegations that USABS and USOPC knew or should have known about

Wilhelm's conduct.  *Compare G.P. v. State*, 82 Misc. 3d 265, 278 (N.Y. Ct. Cl. 2023) (concluding that employer was negligent because although the plaintiff presented evidence of the employee trying to solicit a bribe from the plaintiff, which was not the same as her sexual assault allegations, "Defendant was on notice of a dangerous propensity sufficient to demonstrate to a reasonable employer that Mr. Cioffi should have been prevented from having further unsupervised contact with members of the public until it could be determined that such exposure was not dangerous"), *with Doe v. Poly Prep Country Day Sch.*, No. 20-CV-4718, 2022 WL 4586237, *8 (E.D.N.Y. Sept. 29, 2022) (dismissing negligent hiring, supervision, retention, and direction claim because "the Amended Complaint does not contain any allegation that Defendant was aware of specific acts or allegations of sexual abuse by Miller prior to the alleged abuse of Plaintiff" and "the Amended Complaint does not allege that *anyone* – including students, Poly staff, Poly faculty, or Poly administrators – witnessed the alleged abuse").

### c. Premises Liability against USOPC

USOPC next challenges count four of Plaintiff's first amended complaint which alleges that USOPC is liable for Wilhelm's conduct as the landowner of the Lake Placid Olympic Training Center.  *See* Dkt. No. 37-1 at 17.  USOPC argues that "[t]his claim too fails because the Complaint does not plausibly plead that the USOPC was on notice that Wilhelm posed a risk for abuse."  *Id.*

"To state a claim for negligence under New York law, one must allege, *inter alia*, that the defendant owed a duty of care to the plaintiff."  *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 516 (2d Cir. 2020) (citing *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289 (2001); *Vogel v. West Mountain Corp.*, 97 A.D.2d 46, 48 (3d Dep't 1983)).  "A duty may arise from a special relationship that requires the defendant to

37

protect against the risk of harm to plaintiff . . . .  Landowners, for example, have a duty to protect tenants, patrons and invitees from foreseeable harm caused by the criminal conduct of others while they are on the premises, because the special relationship puts them in the best position to protect against the risk."  *Id.*

"A property owner is obligated to take reasonable precautionary measures to minimize the risk of criminal acts and to make the premises safe for visitors when the owner is aware from past experience that there is a likelihood of conduct on the part of third parties that would endanger visitors."  *Alonso v. Branchinelli*, 277 A.D.2d 408, 408 (2d Dep't 2000) (citations omitted). "Moreover, a property owner has the duty to control the conduct of third persons present on the premises when the owner has the opportunity to control such persons or is reasonably aware of the necessity of such control."  *Id.* at 408-09 (citations omitted).  "'The scope of the duty varies with the foreseeability of the potential harm.'  Stated another way, 'no duty is imposed to protect . . . against unforeseeable and unexpected assaults.'"  *Id.* (quotations omitted).  "Notably, 'even where there is an extensive history of criminal conduct on the premises, the landowner cannot be held to a duty to take protective measures unless it is shown that he or she either knows or has reason to know from past experience that there is a likelihood of conduct on the part of third persons which is likely to endanger the safety of the visitor.'"  *Milton v. I.B.P.O.E. of World Forest City Lodge*, *No. 180*, 121 A.D.3d 1391, 1391 (3d Dep't 2014) (citing, *inter alia*, *Haire v. Bonelli*, 107 A.D.3d 1204, 1205 (3d Dep't 2013)).  "Prior crimes need not be identical to a present crime in order to put a landowner on notice; 'the inquiry of foreseeability depends upon the location, nature and extent of those previous criminal activities and their similarity, proximity or other relationship to the crime in question.'"  *Id.* (quotation omitted).  "Finally, although foreseeability is generally an issue to be resolved by the factfinder, it may be determined as a

matter of law where the facts are undisputed and permit only one inference to be drawn therefrom." *Id.* (citing *Haire*, 107 A.D.3d at 1205; *Ruiz v. Griffin*, 71 A.D.3d 1112, 1115 (2d Dep't 2010)).

Here, there is more than one permissible inference. As explained, it is a permissible inference based on the allegations in Plaintiff's complaint that USOPC knew or should have known about Wilhelm's purported conduct because Plaintiff and her teammates complained about it to USOPC and USABS and USOPC is tasked with reviewing complaints from NGBs such as USABS. *See* Dkt. No. 47-2 at ¶¶ 53-54, 60. Plaintiff also contends that Wilhelm was charged with sexual assault by a patient and former employee of his practice in Montana—an alleged crime similar to those perpetrated against Plaintiff during her "treatments"—many of which occurred at the USOPC training facility. *See id.* at ¶¶ 56-57. Most impactful is Plaintiff's allegation that "an orthopedist for Team USA at USOPC's Lake Placid Center" was e-mailed directly about the Women's Bobsled Team not wanting to work with Wilhelm over concerns for their "safety." *Id.* at ¶ 60.

Accepting Plaintiff's allegations as true, she has sufficiently stated a premises liability claim; therefore, USOPC's motion to dismiss is denied on this ground.

### d. *Failure to Warn or Protect* [6]

---

[6] In a footnote, USOPC argues that "[t]o the extent that Plaintiff alleges that the USOPC's duty to warn or protect Plaintiff arose from the USOPC's ownership or control of the premises on which Plaintiff trained, this claim would be duplicative of Count 4 and fails for the same reasons discussed . . . ." Dkt. No. 37-1 at 14 n.5. Plaintiff did not respond to this one-sentence argument, and USOPC did not raise it in its reply. *See* Dkt. No. 45, 55. "Courts have routinely declined to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-CV-10104, 2017 WL 3973951, *20 (S.D.N.Y. Sept. 7, 2017) (citations omitted); *see also Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal"). USOPC provides no case law support for its contention that failure to warn claims and premises liability claims are duplicative.

Finally, USABS and USOPC seek to dismiss count five of Plaintiff's first amended complaint for negligent failure to warn or protect.  USOPC argues that it had no control over Wilhelm nor any knowledge of prior alleged sexual misconduct.  *See* Dkt. No. 37-1 at 19-21. USABS states that "[e]ven assuming the Complaint properly alleges USABS[] owes Plaintiff a duty to warn, which USABS does not concede, Plaintiff nevertheless fails to allege any notice giving rise to such duty."  Dkt. No. 38-1 at 16.  Plaintiff argues that she has sufficiently pled an employer-employee relationship between Plaintiff and the two Defendant entities, and that both entities had knowledge of the alleged conduct.  *See* Dkt. No. 45 at 26-28; Dkt. No. 46 at 24-25.

New York courts "have been cautious . . . in extending liability to defendants for their failure to control the conduct of others.  'A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control.'"  *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232-33 (2001), *opinion after certified question answered*, 264 F.3d 21 (2d Cir. 2001) (quoting *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987)).  "This judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another."  *Id.*  "A duty may arise, however, where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's

---

Because this argument was insufficiently briefed, the Court will not consider it as a basis for dismissal.  However, through the Court's research into the issues presented in this Memorandum-Decision and Order, it is aware that courts routinely dismiss premises liability claims as duplicative of negligent hiring, retention, and training claims where those claims are based on the same facts and seek identical damages.  *See PC-41 Doe*, 590 F. Supp. 3d at 571; *D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, No. 6:22-CV-06567, 2024 WL 989703, *13 (W.D.N.Y. Mar. 7, 2024); *C.Q. v. Est. of Rockefeller*, No. 20-CV-2205, 2021 WL 4942802, *4 (S.D.N.Y. Oct. 21, 2021); *Guerriero*, 2024 WL 2826097, at *10; *Fay v. Troy City Sch. Dist.*, 197 A.D.3d 1423, 1424 (3d Dep't 2021).  Nevertheless, without any briefing on the matter, the Court will not dismiss any claims as duplicative of one another.

actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others." *Id.* "Examples of these relationships include master and servant, parent and child, and common carriers and their passengers." *Id.* "The key in each is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm." *Id.* "In addition, the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship." *Id.* In determining the scope of alleged duty, the Court considers the following:

> the most reasonable allocation of risks, burdens and costs among the parties and within society, accounting for the economic impact of a duty, pertinent scientific information, the relationship between the parties, the identity of the person or entity best positioned to avoid the harm in question, the public policy served by the presence or absence of a duty and the logical basis of a duty.

*Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) (quoting *In re N.Y. City Asbestos Litig.*, 27 N.Y.3d 765, 788 (2016)). "'Foreseeability defines the scope of a duty once it has been recognized.'" *Id.* (quotation omitted).

As already discussed, Plaintiff has alleged facts sufficient to establish an employer-employee relationship between Wilhem and USOPC. Additionally, despite USABS contending that "there are no allegations concerning USABS's control of Wilhelm, beyond the (untrue) allegation that he was employed by USABS," it does not formulate any argument as to how the allegation is "untrue." Dkt. No. 38-1 at 17. Plaintiff's first amended complaint clearly alleges that Wilhelm worked directly for both USOPC and USABS, that USOPC had the authority and power to control and address personal concerns within USABS, and that USOPC has publicly "touted" Wilhelm as someone it hired to directly work for USABS. Dkt. No. 47-2 at ¶¶ 33, 35, 39. To

what extent these allegations prove to be true and the specific relationship among the three Defendants is better suited to be parsed out through discovery. At this stage, Plaintiff has alleged enough facts, that if taken as true, establish that USOPC and USABS had "actual control" over Wilhelm's actions. *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232-33 (2001).

As to the scope of their duty, USOPC argues that "[t]he Complaint instead attempts to enlarge New York tort law well beyond the scope recognized by courts by imposing a duty on the USOPC to 'implement safeguards to prevent sexual violence against athletes on a nationwide enterprise level and regardless of the athlete's affiliation with the USOPC or one of its NGBs.'" Dkt. No. 37-1 at 19-20 (quotation omitted); *see also* Dkt. No. 47-2 at ¶ 68. The Court agrees with USOPC that this framing impermissibly raises "the specter of limitless liability." *Hamilton*, 96 N.Y.2d at 232-33. Plaintiff has not presented any allegations supporting a duty over all athletes in the United States. However, she has sufficiently established a duty to warn or protect those athletes that are associated with USOPC and USABS. Insofar as both entities argue that they were not put on notice of Wilhelm's alleged conduct such that they could not have had a duty to warn, Plaintiff alleges that she and her teammates directly notified both entities of Wilhelm's inappropriate conduct via "a complaint letter," "negative survey[] reviews via an online USOPC portal," and an e-mail to two employees. Dkt. No. 47-2 at ¶¶ 53-54, 60. USOPC and USABS would be in the best position to address the harms considering Plaintiff's allegations that USABS acknowledged that it chose Wilhelm for his position despite complaints by the athletes, USOPC created the Center for SafeSport, an entity intended to protect athletes from sexual abuse, and USOPC was supposed to review complaints submitted to NGBs. *See id.* at ¶¶ 60, 68-70.

USOPC argues that "[t]he Complaint does not, and could not, allege that the USOPC is best positioned to monitor or control medical provider-athlete relationships across more than fifty

NGBs, let alone at every level nationwide.  This would not only require an immense expenditure of resources and risk ineffectiveness, but also would contravene the amateur sports framework created by Congress."  Dkt. No. 55 at 13.  In the abstract, the Court agrees.  It would be an extreme feat for USOPC to be required to control the day-to-day operations of every single medical provider working with an NGB-associated athlete across the country.  However, as alleged in Plaintiff's first amended complaint, USOPC has seemingly accepted the responsibility of ensuring the safety of its athletes from sexual harassment and abuse by establishing the Director of Ethics and SafeSport, a Safe Sport standard, and The Center for SafeSport.  *See* Dkt. No. 47-2 at ¶¶ 68-69.  Although USOPC approved the plan for the Center in 2014, the Center was not launched until 2017.  *See id.* at ¶¶ 69-70.  Plaintiff alleges that during that time, despite complaints being made, USOPC "declin[ed] to intervene at the level of individual complaints." *Id.* at ¶ 72.

Plaintiff alleges that her complaints were not "rerouted back to the associated NGB," but were "wholly ignored."  *Id.* at ¶ 73.  As Plaintiff alleges that USOPC declined to intervene but that her complaints were not rerouted back to USABS, this seems to imply that her complaints made it to USOPC and USOPC did absolutely nothing with them.  These allegations combined with Plaintiff's assertions concerning the presence of USOPC employees, the USOPC portal, and an e-mail to a USOPC employee that referred to prior complaints against Wilhelm, the Court concludes that Plaintiff's allegations are sufficient to establish that USOPC knew or should have known about Wilhelm's conduct and that USOPC and USABS were in the best positions to monitor or control the behavior, much like USOPC had done with their "management concerns" and subsequent investigation into USABS.  Dkt. No. 47-2 at ¶ 83.  Based on the foregoing, the Court denies USOPC and USABS' motion to dismiss Plaintiff's failure to warn or protect claim.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Pro Chiropractic's motion for summary judgment (Dkt. No. 36) is **DENIED**;[7] and the Court further

**ORDERS** that Plaintiff's motion to amend (Dkt. No. 47) is **GRANTED**; and the Court further

**ORDERS** that Defendant United States Olympic & Paralympic Committee's motion to dismiss (Dkt. No. 37) is **GRANTED in part and DENIED in part**;[8] and the Court further

**ORDERS** that Defendant USA Bobsled and Skeleton Federation's motion to dismiss (Dkt. No. 38) is **GRANTED in part and DENIED in part**;[9] and the Court further

**ORDERS** that Plaintiff shall file a first amended complaint in accordance with the Court's rulings in this Memorandum-Decision and Order within fourteen days of the filing date of this decision; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  September 9, 2024
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[7] The claims against Defendants Pro Chiropractic and Jon Wilhelm are permitted to proceed.
[8] Plaintiff's claims for vicarious liability against USOPC, as set forth in count two of her first amended complaint, are dismissed.  Counts three, four, and five are permitted to proceed.
[9] Plaintiff's claims for vicarious liability against USABS, as set forth in count two of her first amended complaint, are dismissed.  Counts three, four, and five are permitted to proceed.

44